IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL DAVID WENNERSTEN,

                Plaintiff,

       v.

CAROLYN COLVIN,

                Defendant.

OPINION AND ORDER

12-cv-783-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Michael David Wennersten is seeking review of a decision denying his claim for disability benefits under the Social Security Act. 42 U.S.C. § 405(g).  The administrative law judge concluded that plaintiff had several severe impairments (coronary artery disease, depression, post-traumatic stress disorder, attention deficit hyperactivity disorder, gambling addiction and alcohol addiction) and that he could not perform his past work as a psychologist.  However, the administrative law judge relied on the testimony of a vocational expert to conclude that plaintiff was not disabled because he could perform no fewer than 60,000 jobs in Wisconsin, even when his physical and mental impairments were taken into account.

      Plaintiff challenges the administrative law judge's decision on two grounds:  (1) he failed to explain how he determined that plaintiff would be "off task" only five percent of the time because of limitations in concentration, persistence or pace; and (2) the vocational

1

expert's reliance on the Occupational Information Network, or O*NET, was improper.  For the reasons discussed below, I am rejecting both arguments and affirming the decision of the administrative law judge.

OPINION

A.  <u>Residual Functional Capacity Assessment</u>

After taking into consideration plaintiff's impairments, the administrative law judge found that plaintiff had following the residual functional capacity:

> medium work  . . . that is unskilled, involving simple, routine and repetitive tasks performed in a low a stress job setting (defined as one having no more than occasional decision making or changes in the work environment), that allows him to be off task five percent of the workday and work alone or in a small group setting, and requires no more than occasional brief, interaction with the public.

AR 236.  Plaintiff argues that the administrative law judge failed to justify his conclusion that plaintiff would be off task five percent of the time.  Plaintiff says that the conclusion is arbitrary and just as easily could have been 15%, 25% or even 50%.  (Plaintiff frames the issue more generally as whether the administrative law judge "failed to provide a hypothetical question which adequately address[es] the plaintiff's limitations," Plt.'s Br., dkt. #20, at 33, but the only issue plaintiff argues is whether the administrative law judge supported his conclusion about being off task, so plaintiff has forfeited any other argument about his limitations.)

I disagree that the administrative law judge did not explain how he reached his finding.  In discussing limitations related to concentration, persistence and pace, the

administrative law judge wrote the following:

> [T]he claimant has worked a number of years despite having ADHD since the age of twelve. Further, treating providers noted his concentration was improving as of April 2006 and took him off Adderall by September 2006. The claimant also engages in numerous activities that require a significant amount of concentration despite his ADHD, such as home construction, gardening, reading, using computers, attending AA meetings and doing odd jobs. Furthermore, he appeared to have no difficulty with concentration or persistence throughout the hearing, as he followed along and answered questions appropriately throughout. Additionally, his concentration, persistence and pace should improve now that he has stopped gambling and using alcohol and Vicodin.
>
> Moreover, the claimant consistently presented with organized, linear and relevant thoughts, intact recent, remote and immediate memory, improving judgment and insight, above average intellect and no looseness of associations, flight of ideas, delusions, grandiosity, or homicidal ideation during mental health examinations, findings inconsistent with his alleged disabling symptoms.
>
> * * *
>
> As for the opinion evidence, notably the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision.
>
> Instead, treating provider Dr. Dean Vaughn indicated that although the claimant has marked limitations in understanding, remembering and carrying out complex instructions or making judgments on complex work-related decision[s], he had no more than moderate restrictions responding to usual work situations or changes in the work setting, mild limitations in interacting appropriately with the public, supervisors or coworkers and making judgments on simple work-related decisions, and no problems understanding, remembering and carrying out simple instructions.
>
> The undersigned gives Dr. Vaughn's opinion great weight, as he has personally observed and examined the claimant over a number of treatment visits. His opinion is also consistent with the overall record, which shows the claimant no longer gambling or drinking alcohol for a number of years, having greatly improved (partial remission) depression symptoms, better

3

concentration and needing only minimal treatment for his PTSD symptoms. Further, the claimant's GAF was consistently rated between 55 and 65, evidencing only moderate to mild symptoms. Thus, the undersigned's restrictions limiting the claimant to unskilled work involving simple, routine and repetitive tasks performed in a low stress work environment that allows the claimant to be off task five percent of the workday, work alone or in a small group setting and requires no more than occasional interaction with the public accounts for Dr. Vaughn's opinion.

The undersigned also gives significant weight to the opinion of state agency psychological consultants, Drs. Keith Bauer and Roger Rattan, who collectively opined that the claimant had no more than mild limitations in activities of daily living or moderate limitations in social functioning and maintaining concentration, persistence, or pace, and remained capable of unskilled work. State agency psychological consultants are highly trained mental health experts, who are familiar with the rules and regulations of disability law, and their opinions are generally consistent with Dr. Vaughn's opinion and the overall record, as described above.

AR 238-39 (citations omitted).

This discussion shows that the administrative law judge did not find *any* persuasive evidence supporting a conclusion that plaintiff's impairments would cause him to be off task for a significant amount of time.  Rather, all the evidence discussed by the administrative law judge supported the opposite conclusion.  For example, he noted that plaintiff had maintained a job as a psychologist for years despite a diagnosis of attention deficit hyperactivity disorder, that all of plaintiff's mental health conditions had improved to the point that he needed little or no treatment and that the state agency consultants had concluded that plaintiff remained capable of unskilled work despite any mental impairments. Thus, the administrative judge's finding that plaintiff could be off task five percent of the time is best read as a conclusion that any difficulties plaintiff has staying on task are negligible. That finding is adequately supported by the various pieces of evidence discussed

by the administrative law judge, none of which plaintiff challenges.

Although the administrative law judge did not explain why he chose five percent instead of two percent or six percent, that lack of precision is not a reason to reverse the decision. Reed v. Astrue, 10 C 0001, 2011 WL 3895302 (N.D. Ill. Aug. 31, 2011) ("[T]here is no specific formula for translating the record evidence into a particular percentage deficit."). The important point is that the administrative law judge did not find any evidence to show that plaintiff's ability to stay on task was impaired to the extent that it would keep him from working.

Plaintiff says that the administrative law judge could have found that plaintiff would be off task 15%, 25% or 50% of the time and he cites various district court opinions for the proposition that a person is unemployable if he is off task more than ten percent of the time. Plt.'s Br., dkt. #20, at 37. The problem with this argument is that he cites no evidence to support a conclusion that any of his impairments would cause him to be off task more than five percent of the time. That failure alone is a sufficient ground to affirm the decision. E.g., Zenka v. Astrue, 904 F. Supp. 2d 884, 901 (N.D. Ill. 2012) (agreeing with plaintiff's argument that administrative law judge failed to explain his conclusion that plaintiff would be off task ten percent of the time, but declining to reverse because "[p]laintiff d[id] not allege that he was entitled to greater restrictions and d[id] not point to any evidence in the record suggesting that he could not stay on-task or attend work").

At one point, plaintiff suggests that the administrative law judge found him to have "moderate" limitations in concentration, persistence and pace, which he says is inconsistent

with a finding that plaintiff would be off task only five percent of the time.  Plt.'s Br., dkt.
#20, at 36.  At another point, he says that the administrative law judge found "marked"
limitations in concentration, persistence and pace.  Id. at 41.  In a footnote in his reply brief,
plaintiff argues that a state agency psychologist gave an opinion that plaintiff was moderately
limited in his ability to stay on task.  Plt.'s Br., dkt. #27, at 6 n.3.

        None of these observations are accurate.  Rather, the administrative law judge found
that plaintiff "has no more than moderate difficulties" with respect to concentration,
persistence and pace.  AR 235.  With respect to the state agency consultants, Keith Bauer
checked a box that plaintiff was "moderately limited" in his ability to "complete a normal
workday and workweek without interruptions from psychologically based symptoms and to
perform at a consistent pace without an unreasonable number and length of rest periods,"
AR 195, but he also checked a box that plaintiff had only a "mild" degree of limitation in
his ability to maintain concentration, persistence and pace.  AR 208.

        The administrative law judge's statement is essentially a restatement of his conclusion
that any limitations plaintiff has with respect to concentration, persistence and pace are not
so severe as to prevent him from working.  Particularly because the administrative law judge
explained in detail why he believed plaintiff's limitations in these areas were minimal, I
decline to find a conflict in his decision simply because he used the word "moderate."  With
respect to Bauer, there may be some tension between the two quoted opinions, but I do not
believe that the greater restriction should be controlling because neither Bauer nor plaintiff
cites any evidence supporting it.  In any event, plaintiff does not cite any controlling

authority for the proposition that a finding of a moderate limitation is necessarily inconsistent with a finding that plaintiff would be off task no more than five percent of the day.  Simila v. Astrue, 573 F.3d 503, 521-22 (7th Cir. 2009) ("[T]hose who are mildly to moderately limited in these areas [concentration, persistence and pace] are able to perform simple and repetitive light work.") (internal quotations omitted); Roberson v. Astrue, 481 F.3d 1020, 1024 (8th Cir. 2007) ("[A] moderate limitation . . . does not prevent an individual from functioning satisfactorily.") (internal quotations omitted).

Plaintiff cites Tapia v. Astrue, 11-C-970, 2012 WL 3100380 (E.D. Wis. July 30, 2012), as persuasive authority, but that case is distinguishable.  In Tapia, the administrative law judge had found without explanation that the claimant would be off task no more than five percent each day, even though the claimant's urologist found that the claimant would need six or seven bathroom breaks each day, each lasting up to five minutes, and even though the administrative law judge found that the plaintiff's mental health impairments would inhibit her ability to concentrate.  Tapia is not instructive in this case because plaintiff cites no evidence that the administrative law judge overlooked that would support a more restrictive finding.  Accordingly, I am affirming the decision of the administrative law judge on this issue.

## B.  Reliance on Occupational Information Network

An individual is disabled only if he "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

7

economy . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A).  Plaintiff's second objection relates to the administrative law judge's determination that plaintiff could perform a significant number of jobs despite his impairments.  In particular, plaintiff objects to the vocational expert's reliance on the Occupational Information Network, commonly called the O*NET, in determining the number of available jobs.  (Both case law and the parties refer to the network variously as "O*NET," "O'NET" and "ONET."  I have used the designation found on the network's website. www.onetonline.org.)

Although plaintiff repeats arguments he made at the hearing before the administrative law judge that "[u]se of the O*NET is not appropriate," e.g., Plt.'s Br., dkt. #27, at 9, he grudgingly acknowledges elsewhere in his briefs that the federal regulations do not prohibit an administrative law judge from relying on the O*NET.  As the administrative law judge pointed out, 20 C.F.R. § 404.1566(d) allowed him to "take administrative notice of reliable job information available from various governmental and other publications."  Although the Dictionary of Occupational Titles is listed as an "example" of such a publication, the list is not exclusive.  Lee v. Barnhart, 63 Fed. Appx. 291, 292-93 (9th Cir. 2003)(federal law "does not preclude reliance on the O*NET"); Moss v. Astrue, 09-1196, 2010 WL 2572040 (C.D. Ill. June 22, 2010) ("[T]he VE is not required to limit his hypothetical to DOT data; the VE can also use outside data, including ONET.").

In this case, the vocational expert testified that the O*NET is "a source that vocational experts routinely rely on."  AR 305.  In fact, the O*NET has "superseded the

DOT as the federal government's primary source of occupational information." Horsley v. Commissioner of Social Security, 1:11CV703, 2013 WL 980315 (S.D. Ohio Mar. 13, 2013). Because the Dictionary has not been updated since 1991, it is "considered obsolete by most other federal agencies" outside the Social Security Administration. Id. Even the Department of Labor, the publisher of the Dictionary, now uses the O*NET instead. Jordan v. Astrue, 4:08CV3217, 2009 WL 3380979 (D. Neb. Oct. 21, 2009). At least one appellate court has found that O*NET is *more* reliable than the Dictionary under some circumstances. Cunningham v. Astrue, 360 Fed. Appx. 606, 616 (6th Cir. 2010) (remanding decision because administrative law judge relied on job descriptions in Dictionary when "more current" descriptions were available on O*NET).

Plaintiff argues that the administrative law judge failed to comply with SSR 00-4p, which requires the administrative law judge to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles." However, the court of appeals has held that the claimant has the initial burden to point out any conflict between the Dictionary and other evidence unless "the conflict was obvious enough that the ALJ should have picked up on it without any assistance." Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (internal quotations and alterations omitted).

In this case, the vocational expert testified that her testimony was consistent with the Dictionary. AR 314. Although plaintiff says repeatedly throughout his briefs that the vocational expert's testimony was in conflict with the Dictionary and that counsel identified

9

the conflicts at the hearing, he never identifies what the conflict was.  He says that "the conflict was apparent" because "[t]he ALJ's decision itself points to the conflict."  Plt.'s Br., dkt. #20, at 50.  He then quotes a sentence from the decision that "Attorney Duncan also argued that O'NET is not a recognized, reliable source in the SSA regulations and objected to [the vocational expert's] use of the database."  Id. at 50.  Although that sentence shows that counsel objected to the expert's reliance on the O*NET, it does not identify any conflict between the O*NET and the Dictionary.

At the hearing, counsel argued that the administrative law judge should not use the O*NET because "there is no direct correlation between citations in the O*NET to the specific DOT codes."  AR 301.  He makes a similar statement in his brief that the O*NET "does not provide occupations in direct relation to the DOT."  Plt.'s Br., dkt. #20, at 45.  The vocational expert explained that the O*NET consolidated the job categories in the Dictionary and added new descriptions "to keep up with the actual . . . way that jobs are performed now."  AR 305.  To the extent plaintiff means to argue that the O*NET's updates to the Dictionary are themselves "conflicts," I disagree.  In Overman v. Astrue, 546 F.3d 456 (7th Cir. 2008), the decision plaintiff cites throughout his briefs as requiring a reversal in this case, the conflict noted by the court was very different.  In particular, the expert found that the claimant could work as a hand packager and rack room worker, even though the Dictionary stated that both jobs had requirements that the claimant could not meet.  Id. at 462.

In this case, plaintiff does not argue that any of the jobs the expert identified have

requirements that are inconsistent with his limitations.  Terry, 580 F.3d at 478 (no conflict between vocational expert's testimony and Dictionary when plaintiff did "not argue that she cannot perform" jobs identified by expert).  The closest he comes is to say that some of the job codes the expert used could encompass semi-skilled jobs (which plaintiff cannot perform) and that the expert did not say whether she excluded those jobs from the numbers she calculated.  However, the expert testified that she "us[ed] the lowest skill range" in determining the number of jobs plaintiff could perform, AR 310, so it is reasonable to infer that she excluded any semi-skilled jobs from her calculation.  Further, plaintiff's counsel had an opportunity to ask the expert more specific questions about how she came up with her figure, but he failed to do that at the hearing.  It was not until after the hearing that counsel argued that some of the jobs identified by the expert might be semi-skilled.  Cf. Liskowitz v. Astrue, 559 F.3d 736, 743-44 (7th Cir. 2009) ("Had Liskowitz actually objected to the VE's testimony, the VE could have said more about the kind of information [plaintiff is challenging now."]).

        In any event, the expert found that plaintiff could perform more than *60,000* jobs in Wisconsin alone, including 32,000 custodial jobs, 19,000 packaging jobs and 13,000 production jobs.  AR 241.  The only specific objection plaintiff raises is to the expert's conclusion regarding the number of custodial jobs plaintiff could perform.  AR 422.  Even if all of those are excluded, this still leaves more than 30,000 jobs.   Because the court of appeals has stated that it is well "well-established that 1,000 jobs is a significant number," Liskowitz, 559 F.3d at 743, and plaintiff does not identify a reason to believe that he cannot

11

perform any of the other jobs identified by the expert, I see no reason to reverse the administrative law judge's decision on this ground.

ORDER

IT IS ORDERED that Michael David Wennersten's motion for summary judgment, dkt. #18, is DENIED and the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered this 10th day of September, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

12